THIS ORDER IS A
PRECEDENT OF THE
TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

kb

August 7, 2023

Opposition No. 91233515 (parent case)
Opposition No. 91233516
Opposition No. 91233517
Opposition No. 91242202

*Monster Energy Company*

*v.*

*Coulter Ventures, LLC*

Opposition No. 91252191

*Coulter Ventures, LLC*

*v.*

*Monster Energy Company*

**Katie Bukrinsky, Interlocutory Attorney:**

These consolidated proceedings come before the Board on (1) Monster Energy Company's ("MEC") motion, filed March 3, 2023, for leave to serve a sur-rebuttal expert report,[1] and (2) Coulter Ventures, LLC's ("Coulter Ventures") motion, filed March 27, 2023, for reconsideration of the Board's order striking its sur-sur-rebuttal expert report.[2] Both motions are fully briefed. The Board has fully considered the

---

[1] 110 TTABVUE.

[2] 115 TTABVUE.

parties' briefs and associated materials, addresses the record only to the extent necessary to set forth the Board's analysis and findings, and does not repeat or address all of the parties' arguments or materials. *Guess? IP Holder LP v. Knowluxe LLC*, 116 USPQ2d 2018, 2019 (TTAB 2015).

## I.     Procedural Background

Under the applicable schedule, the deadline for the parties to disclose experts was September 20, 2021.[3] On that deadline, MEC served the expert report of Sara Parikh, PhD ("Parikh Report"), wherein Dr. Parikh offered a survey allegedly demonstrating that there is significant overlap of consumers of the parties' goods offered under their respective marks.[4] Coulter Ventures did not disclose an expert by the deadline.

Thereafter, on September 22, 2021, the Board suspended proceedings for ninety days as to "activities not related to the discovery and exchange of information about, and reports by, the disclosed expected expert witnesses," and allowed Coulter Ventures thirty days to disclose any planned **rebuttal** expert report.[5]

---

[3] 80 TTABVUE 2. Citations to the record refer to TTABVUE, the Board's online docketing system. Specifically, the number preceding "TTABVUE" corresponds to the docket entry number in Opposition No. 91233515, and any number(s) following "TTABVUE" refer to the page number(s) of the docket entry where the cited materials appear. The parties' submissions, including trial briefs, motions, responses, and replies, should utilize citations to the TTABVUE record created throughout the proceeding and during trial to facilitate the Board's review of the evidence throughout the proceeding and at final hearing. *See* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 801.03 (2023).

[4] 102 TTABVUE 13-44 (MEC's motion to strike). *See also* 81 TTABVUE (notification of expert disclosure).

[5] 82 TTABVUE 2. *See also* Trademark Rule 2.120(a)(2)(iii), 37 C.F.R. § 2.120(a)(2)(iii) ("Upon disclosure by any party of plans to use expert testimony . . . the Board . . . may issue an order regarding expert discovery and/or set a deadline for any other party to disclose plans to use a rebuttal expert.").

On October 22, 2021, Coulter Ventures served a rebuttal to the Parikh report prepared by David Franklyn ("Franklyn Rebuttal"), wherein Mr. Franklyn critiqued Dr. Parikh's survey and offered a likelihood of confusion survey utilizing the universe identified in the Parikh Report.[6]

On March 22, 2022, MEC served a sur-rebuttal report prepared by Dr. Parikh ("Parikh Sur-Rebuttal"), which, inter alia, critiqued the stimuli used by Mr. Franklyn in his survey.[7] MEC did not obtain leave of the Board to serve this report.

Coulter Ventures thereafter served a sur-sur-rebuttal report prepared by Mr. Franklyn ("Franklyn Sur-Sur-Rebuttal"), wherein Mr. Franklyn offered a new likelihood of confusion survey that altered the stimuli from his initial survey to account for Dr. Parikh's criticism.[8] MEC moved to strike this report as improper sur-rebuttal.[9]

In addressing MEC's motion to strike the Franklyn Sur-Sur-Rebuttal, the Board first explained that Mr. Franklyn's initial report was itself a rebuttal, inasmuch as it was titled "Rebuttal Report to the Expert Report of Sara Parikh" and was served during the period allowed for Coulter Ventures to serve a rebuttal report; and that in addition MEC did not argue it was an untimely disclosure of a non-rebuttal expert.[10] In view thereof, Dr. Parikh's report responding to the Franklyn Rebuttal was a sur-

---

[6] 102 TTABVUE 46-96.

[7] *See id.* at 103-120.

[8] *See id.* at 122-150.

[9] *See generally id.*

[10] 108 TTABVUE 5-6.

rebuttal, and Mr. Franklyn's report responding to the Parikh Sur-Rebuttal was a sur-sur-rebuttal.[11] The Board held that "nothing in Fed. R. Civ. P. 26(a)(2), Trademark Rule 2.120(a)(2)(iii), or the Board's precedent allows for a sur-sur-rebuttal expert report," and accordingly granted the motion to strike the Franklyn Sur-Sur-Rebuttal.[12]

In addition, the Board noted—relying on *Newegg Inc. v. Schoolhouse Outfitters, LLC*, 118 USPQ2d 1242, 1244 (TTAB 2016)—that while a sur-rebuttal may be permitted upon leave of the Board, MEC had not sought leave to serve a sur-rebuttal.[13] In view thereof, the Board informed the parties that the Parikh Sur-Rebuttal would be given no consideration unless MEC sought and obtained leave to serve it.[14]

## II.    MEC's Motion for Leave to Serve Parikh Sur-Rebuttal

MEC now seeks leave to serve the Parikh Sur-Rebuttal.[15] MEC makes two arguments in support of its motion: (1) that it had a good faith belief that the Franklyn Rebuttal was an "original report on a new issue" and that therefore the Parikh Sur-Rebuttal was actually a rebuttal report; and (2) that without leave to

---

[11] *Id.* at 6.

[12] *Id.* at 6-7.

[13] *Id.* at 7.

[14] *Id.* at 7-8.

[15] 110 TTABVUE.

serve the Parikh Sur-Rebuttal MEC would have no "opportunity to respond to the likelihood of confusion survey and associated opinions" in the Franklyn Rebuttal.[16]

In response, Coulter Ventures argues, inter alia, that the Parikh Sur-Rebuttal improperly contains "an entire section devoted to bolstering Dr. Parikh's original report."[17]

In *Newegg*, the Board held that "under appropriate circumstances, a sur-rebuttal expert report would be proper as long as a party that wishes to provide a sur-rebuttal expert report promptly seeks leave to do so" and if consideration of the sur-rebuttal report would "serve the interest of fairness [and] benefit the Board in its ability to make a just determination of the merits of this case." 118 USPQ2d at 1244.

MEC's contention that it believed the Franklyn Rebuttal to be an original report is not well-taken. The Franklyn Rebuttal was served after the expert disclosure deadline, during the time period in which Coulter Ventures was only permitted to serve a **rebuttal** report. Further, the Franklyn Rebuttal was identified on its cover page as a "Rebuttal Report."[18] Moreover, MEC did not argue it was an untimely disclosure of a non-rebuttal expert nor did it seek reconsideration of the Board's finding that the Franklyn Rebuttal was a rebuttal to the Parikh Report.

---

[16] *Id.* at 4-5.

[17] 112 TTABVUE 5. Coulter Ventures devotes the remainder of its brief arguing that the Franklyn Sur-Sur-Rebuttal should be allowed. *Id.* at 7-11. The Board addresses this contention *infra* with respect to Coulter Ventures' motion for reconsideration.

[18] *See* 102 TTABVUE 46.

The Board is more amenable to MEC's second argument. As was the case in *Newegg*, the Franklyn Rebuttal includes "new evidence in the form of a different survey performed according to a different methodology on the issue of likelihood of confusion." *Newegg*, 118 USPQ2d at 1244. In view thereof, the Board finds it would serve the interest of fairness, and allow the Board to make a just determination of the merits of the case, to allow MEC to submit expert testimony opining on the survey in the Franklyn Rebuttal. *See id.*

Specifically, the only portion of the Parikh Sur-Rebuttal that the Board allows is a critique of the Franklyn Rebuttal, with no presentation of new evidence. Any portion that constitutes bolstering of the Parikh Report will not be considered. *See Gemological Inst. of Am., Inc. v. Gemology Headquarters Int'l, LLC*, 111 USPQ2d 1559, 1561-62 (TTAB 2014) (a report that seeks to clarify an expert's earlier opinions and rebut contradictory testimony is bolstering). A sur-rebuttal report may not be used to bolster previously disclosed opinions. *See Newegg*, 118 USPQ2d at 1244. *Cf. Empresa Cubana Del Tabaco v. Gen. Cigar Co.,* 2020 USPQ2d 10988, at *3 (TTAB 2020) (Fed. R. Civ. P. 26(e) does not permit an expert to bolster previously disclosed opinions); *ProMark Brands Inc. v. GFA Brands, Inc.*, 114 USPQ2d 1232, 1238-39 (TTAB 2015); *Gemological Inst. of Am.,* 111 USPQ2d at 1561-62. With these limitations, the admission of the Parikh Sur-Rebuttal does not raise the specter of an endless series of rebutting expert reports. *See Newegg*, 118 USPQ2d at 1244.

Accordingly, MEC's motion for leave to serve the Parikh Sur-Rebuttal is **granted, in part**, to the extent it is limited to a critique of the Franklyn Rebuttal.

### III.    Motion for Reconsideration

Coulter Ventures seeks reconsideration of the Board's decision to strike the Franklyn Sur-Sur-Rebuttal. As an initial matter, inasmuch as Coulter Ventures filed its motion for reconsideration within thirty days from the issuance of the Board's order, the motion is timely. 37 C.F.R. § 2.127(b).[19]

The premise underlying a request for reconsideration under Trademark Rule 2.127(b), 37 C.F.R. § 2.127(b), is that, based on the facts before it and the prevailing authorities, the Board erred in reaching the decision it issued. *See* TBMP § 518 and authorities cited therein. The request may not be used to introduce additional evidence. *See Amoco Oil Co. v. Amerco, Inc.*, 201 USPQ 126, 127 (TTAB 1978). *See also* TBMP § 518.

Initially, as explained both in the Board's original order and *supra*, a sur-rebuttal report is permitted only under appropriate circumstances, and only where the proponent "promptly seeks" to serve such a report. *Newegg*, 118 USPQ2d at 1244. Inasmuch as Coulter Ventures did not seek the Board's leave to serve a sur-sur-rebuttal report prior to serving the Franklyn Sur-Sur-Rebuttal, the report could have been excluded on this ground alone. *Id.*[20] In not doing so, the Board implicitly construed Coulter Ventures' opposition to MEC's motion to strike as a belated motion for leave to serve a sur-sur-rebuttal report.

---

[19] The Board notes the withdrawal of attorney and change of correspondence address for Coulter Ventures. 113, 114 TTABVUE. The Board's records have been updated accordingly.

[20] *See also* 108 TTABVUE 7-8 (noting that the Parikh Sur-Rebuttal would be given no consideration unless MEC obtained the Board's leave to serve it).

In granting MEC's motion to strike, the Board stated that "nothing in Fed. R. Civ. P. 26(a)(2), Trademark Rule 2.120(a)(2)(iii) or the Board's precedent allows for a sur-sur-rebuttal expert report."[21] Although, as Coulter Ventures contends, the Federal Rules of Civil Procedure and the Trademark Rules of Practice do not expressly prohibit sur-sur-rebuttal expert reports, the matter of whether to allow any expert reports other than those expressly provided for in Fed. R. Civ. P. 26(a) and (e) is left to the discretion of the tribunal. *See Newegg*, 118 USPQ2d at 1243-44 (reviewing district courts' treatment of sur-rebuttals). The Board, like other courts, has inherent authority to manage its docket. *Coffee Studio LLC v. Reign LLC*, 129 USPQ2d 1480, 1482 n.7 (TTAB 2019); *Carrini, Inc. v. Carla Carini, S.R.L.*, 57 USPQ2d 1067, 1071 (TTAB 2000).

In *Newegg*, the Board held that a sur-rebuttal expert report may be permitted "under appropriate circumstances." 118 USPQ2d at 1244. The Board now holds that, in contrast, sur-sur-rebuttal expert reports will **not** be permitted under any circumstances. The rationale for this finding is that discussed in *Newegg* and quoted in the Board's order on the motion to strike:

> Continuously allowing expert rebuttal would create a situation "where there would be no finality to expert reports.... Such a system would eviscerate the expert report requirements of Rule 26, would wreak havoc in docket control, and would amount to unlimited expert opinion presentation."

*Id.* (quoting *Houle v. Jubilee Fisheries, Inc.*, 2006 U.S. Dist. LEXIS 1408, 2006 WL 27204, at *2 n.4 (W.D. Wash. Jan. 5, 2006)). *See also Maker's Mark Distillery, Inc. v.*

---

[21] 108 TTABVUE 6-7.

*Spalding Grp., Inc.*, 2022 U.S. Dist. LEXIS 228509, 2022 WL 17824427, at *12 (W.D. Ky. Dec. 20, 2022) (denying leave to serve sur-sur-rebuttal because "[t]he exchange of expert reports . . . cannot continue in perpetuity.").

Notably, the circumstances in which the Board will grant leave to serve a sur-rebuttal expert report are exceedingly rare. In general, parties offering expert testimony in Board proceedings should presume that only evidence expressly contemplated by Fed. R. Civ. P. 26(a) and (e) will be considered. A sur-rebuttal report that contains new evidence, or one which would otherwise necessitate a response from the other party in the interest of fairness, will not be permitted. In view thereof, a sur-sur-rebuttal should never be necessary.[22] A bright-line rule that sur-sur-rebuttal expert reports will not be permitted under any circumstances provides clarity for parties preparing expert testimony that there will be finality to the exchange of expert opinions. Any further challenges to the opposing party's expert testimony may be addressed through deposition and cross-examination of that expert.

Coulter Ventures argues that even if its service of the Franklyn Sur-Sur-Rebuttal was improper, the Board should not have stricken it without first considering if its submission was substantially justified or harmless under Fed. R. Civ. P. 37(c)(1).[23]

---

[22] The Board's holding herein does not concern supplementation under Fed. R. Civ. P. 26(e) or requests to reopen expert testimony. Coulter Ventures did not argue that the Franklyn Sur-Sur-Rebuttal constituted a supplemental report under Fed. R. Civ. P. 26(e); nor did it seek reconsideration of the Board prior finding that its report is not proper supplementation. *See* 108 TTABVUE 6 n.2.

Nor did Coulter Ventures seek to reopen its time to serve a rebuttal expert report. Moreover, a motion to reopen would be inapplicable on these facts, inasmuch as Coulter Ventures does not seek to replace its existing expert report, but rather to respond to MEC's latest report.

[23] 115 TTABVUE 4-10.

Fed. R. Civ. P. 37(c)(1) addresses untimely disclosures, and states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The Franklyn Sur-Sur-Rebuttal is neither an untimely disclosure nor a supplemental report, but rather a sur-sur-rebuttal that seeks to get the last word in the battle of the experts. Indeed, Coulter Ventures concedes that "[a]bsent the Parikh Sur-Rebuttal, [Coulter Ventures] would have had no reason to create" the Franklyn Sur-Sur-Rebuttal.[24] Inasmuch as sur-sur-rebuttal expert reports are not contemplated by Fed. R. Civ. P. 26(a) or (e) or the Board's rules, Fed. R. Civ. P. 37(c) is not directly applicable.

For the foregoing reasons, the Board finds that it committed no legal error in excluding the Franklyn Sur-Sur-Rebuttal. Coulter Ventures' request for reconsideration is **denied**.

Nonetheless, the Board **clarifies its prior order as follows**: Coulter Ventures' construed motion for leave to serve the Franklyn Sur-Sur-Rebuttal is denied. Accordingly, this report and any testimony based thereon will receive no consideration at trial or upon a motion for summary judgment.

The reason for this clarification is that Coulter Ventures has not submitted the Franklyn Sur-Sur-Rebuttal into evidence at trial or in connection with a motion for

---

[24] 112 TTABVUE 7 (Coulter Ventures' response to MEC's motion for leave to serve its sur-rebuttal).

summary judgment; nor has it served pretrial disclosures stating its intent to rely on this report. In view thereof, there was no evidence or disclosure for the Board to "strike." *See, e.g., Societe Des Produits Nestle S.A. v. Cándido Viñuales Taboada*, 2020 USPQ2d 10893, at *7 (TTAB 2020) (objections to trial testimony may be raised via motion to strike **after** the evidence is proffered); *Spier Wines (PTY) Ltd. v. Shepher*, 105 USPQ2d 1239, 1240 (TTAB 2012) (motion to strike inadequate pretrial disclosures).

## IV.    Proceedings Resumed; Dates Reset

These consolidated proceedings are resumed. To allow time for the orderly completion of expert depositions, remaining dates are reset as follows:

| | |
|---|---|
| **Discovery Closes** | **10/9/2023** |
| **Pretrial Disclosures Due for Party in Position of Plaintiff in Original Claim** | **11/23/2023** |
| **30-day Trial Period Ends for Party in Position of Plaintiff in Original Claim** | **1/7/2024** |
| **Pretrial Disclosures Due for Party in Position of Defendant in Original Claim and in Position of Plaintiff in Counterclaim** | **1/22/2024** |
| **30-day Trial Period Ends for Party in Position of Defendant in Original Claim, and in Position of Plaintiff in Counterclaim** | **3/7/2024** |
| **Pretrial Disclosures Due for Rebuttal of Party in Position of Plaintiff in Original Claim and in Position of Defendant in Counterclaim** | **3/22/2024** |
| **30-day Trial Period Ends for Rebuttal of Party in Position of Plaintiff in Original Claim, and in Position of Defendant in Counterclaim** | **5/6/2024** |
| **Pretrial Disclosures Due for Rebuttal of Party in Position of Plaintiff in Counterclaim** | **5/21/2024** |
| **15-day Trial Period Ends for Rebuttal of Party in Position of Plaintiff in Counterclaim** | **6/20/2024** |
| **Opening Brief for Party in Position of Plaintiff in Original Claim Due** | **8/19/2024** |

| | |
|---|---|
| **Combined Brief for Party in Position of Defendant in Original Claim and Opening Brief as Plaintiff in Counterclaim Due** | **9/18/2024** |
| **Combined Rebuttal Brief for Party in Position of Plaintiff in Original Claim and Brief as Defendant in Counterclaim Due** | **10/18/2024** |
| **Rebuttal Brief for Party in Position of Plaintiff in Counterclaim Due** | **11/2/2024** |
| **Request for Oral Hearing (optional) Due** | **11/12/2024** |

## IMPORTANT TRIAL AND BRIEFING INSTRUCTIONS

Generally, the Federal Rules of Evidence apply to Board trials. Trial testimony is taken and introduced out of the presence of the Board during the assigned testimony periods. The parties may stipulate to a wide variety of matters, and many requirements relevant to the trial phase of Board proceedings are set forth in Trademark Rules 2.121 through 2.125, 37 C.F.R. §§ 2.121-2.125. These include pretrial disclosures, the manner and timing of taking testimony, matters in evidence, and the procedures for submitting and serving testimony and other evidence, including affidavits, declarations, deposition transcripts and stipulated evidence. Trial briefs shall be submitted in accordance with Trademark Rules 2.128(a) and (b), 37 C.F.R. §§ 2.128(a) and (b). Such briefs should utilize citations to the TTABVUE record created during trial, to facilitate the Board's review of the evidence at final hearing. *See* TBMP § 801.03. Oral argument at final hearing will be scheduled only upon the timely submission of a separate notice as allowed by Trademark Rule 2.129(a), 37 C.F.R. § 2.129(a).

## TIPS FOR FILING EVIDENCE, TESTIMONY, OR LARGE DOCUMENTS

The Board requires each submission to meet the following criteria before it will be considered: 1) pages must be legible and easily read on a computer screen; 2) page

orientation should be determined by its ease of viewing relevant text or evidence, for example, there should be no sideways or upside-down pages; 3) pages must appear in their proper order; 4) depositions and exhibits must be clearly labeled and numbered – use separator pages between exhibits and clearly label each exhibit using sequential letters or numbers; and 5) the entire submission should be text-searchable. Additionally, submissions must be compliant with Trademark Rules 2.119 and 2.126. Submissions failing to meet all of the criteria above may require re-filing. **Note:** Parties are strongly encouraged to check the entire document before filing.[25] The Board will not extend or reset proceeding schedule dates or other deadlines to allow time to re-file documents. For more tips and helpful filing information, please visit the ESTTA help webpage.

---

[25] To facilitate accuracy, ESTTA provides thumbnails to view each page before submitting.